UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                        Case No.:  04CV3196 (ADS)

MICHAEL STEIN,

                                        U.S. Bankruptcy Court
                 Debtor.             Case No. 8-01-84011


------------------------------------------------------------------x


# APPELLANT'S BRIEF


**Silverman Perlstein & Acampora LLP**
Attorneys for Appellant, Kenneth P. Silverman, Esq.
Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 1153
(516) 479-6300

## **TABLE OF CONTENTS**

Preliminary Statement ...........................................................................................1

Issues Presented on Appeal ..................................................................................2

Relevant Facts .......................................................................................................3

      The Trustee's and SPA's Efforts and Their Results ...................................3

      The Trustee's and SPA's Applications Below............................................4

      The Bankruptcy Court's Decision and Order.............................................5

Standard Review.....................................................................................................5

Statutory Background .............................................................................................6

Argument ................................................................................................................7

    I.      The Court Erred in Applying A "Proportionality"
           Test To The Trustee's And SPA's Fee Applications....................................7

    II.     The Bankruptcy Court Improperly Subordinated The
           Administrative Expense Claims Of The Trustee And
           SPA To The Claims of Priority And Unsecured Creditors ............................10

    III.    Disbursements Made By A Trustee To Counsel Are
           Properly Included Within The Base For Computing
           A Trustee's Commission.............................................................................12

Conclusion    .......................................................................................................15

## TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. §326.................................................................................................................12, 14

11 U.S.C. §326(a) .........................................................................................................4, 6, 14, 15

11 U.S.C. §330................................................................................................................1, 6, 7, 8, 14

11 U.S.C. §330(a) .........................................................................................................6, 7, 11

11 U.S.C. §330(a)(1)(A) ...............................................................................................6

11 U.S.C. §331...............................................................................................................8

11 U.S.C. §503...............................................................................................................14

11 U.S.C. §503(b) .........................................................................................................7, 11

11 U.S.C. §503(b)(1)......................................................................................................6

11 U.S.C. §503(b)(1)(A) ................................................................................................15

11 U.S.C. §503(b)(2)......................................................................................................6, 7, 11

11 U.S.C. §507...............................................................................................................10

11 U.S.C. §507(a) .........................................................................................................11

11 U.S.C. §507(a)(1)......................................................................................................7, 11

11 U.S.C. §544...............................................................................................................6

11 U.S.C. §548...............................................................................................................6

11 U.S.C. §550...............................................................................................................6

11 U.S.C. §704(1) ..........................................................................................................6

11 U.S.C. §704(4) ..........................................................................................................6, 9

11 U.S.C. §704(6) ..........................................................................................................6, 9

11 U.S.C. §726...............................................................................................................10

11 U.S.C. §726(a) .........................................................................................................10

11 U.S.C. §726(a)(1)......................................................................................................6, 7, 11

11 U.S.C. §727(c)(1)......................................................................................................6, 9

11 U.S.C. §727(c)(2),.....................................................................................................3, 6

28 U.S.C. §586(a)(3).....................................................................................................7

28 U.S.C. § 586(a)(3)(A)(i) and (A)(ii) ................................................................7

124 Cong. Rec. H11, 091-92
(daily ed. Sept. 28, 1978) ...............................................................................8, 9

H.R. Rep. No. 95-595, 95th Cong.
1st Sess. 329 (1977) ............................................................................................9

New York Judiciary Law Section 475 .................................................................14

## Cases

*United States* v. *Ron Pair Enterprises, Inc.*
489 U.S. 235, 242, 109 S. Ct. 1026, 1031 (1989) .............................................12

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air*
478 U.S. 546, 563 (1986) ...................................................................................8

*In re Ames Dep't Stores, Inc.*
76 F.3d 66, 72 (2d. Cir. 1996) ............................................................................7

*In re Taxmon Clothing Co.*
49 F.3d 310, 315 (7th Cir. 1995) .........................................................................7

*In re Busy Beaver Bldg. Center, Inc.*
19 F. 3d 833, 849 (3d Cir. 1994) ...........................................................8, 9, 12, 15

*In re First Colonial Corp. of America*
544 F.2d 1291, 1294 (5th Cir.) *cert denied*, 431 U.S. 904 (1977) .......................8

*Johnson v. Georgia Highway Express*
488 F.2d 714 (5th Cir. 1974) ...............................................................................8

*McMillan v. United States Fidelity & Guar. Co.*
22 F.2d 155 (8th Cir. 1927) ...............................................................................15

*In re DLC, Ltd.*
295 B.R. 593 (8th Cir. B.A.P. 2003) ..........................................................9, 10, 11

*In re Lan Associates XI. L.P.*
237 B.R. 49, 54 (D.N.J. 1998) .............................................................................5

*In re Integrated Resources, Inc*
157 B.R. 66, 72 (S.D.N.Y. 1993) .........................................................................6

*In re Cena=s Fine Furniture, Inc.*
109 B.R. 575, 581 (E.D.N.Y. 1990) .....................................................................8

*In re E. Keffas & Son Florist, Inc.*
240 B.R. 466 (Bankr. E.D.N.Y. 1999) ..................................................................8

*In re Guido,* 237 B.R. 562
(Bankr. E.D.N.Y. 1999) .........................................................................12, 13, 14

*In re North American Oil & Gas, Inc.*
130 B.R. 473, 478 (Bankr. W.D. Tex. 1990)..................................................................14, 15

*In re Orient River Investments, Ltd.*
133 B.R. 729, 732 (Bankr. B.D. Pa. 1991) .........................................................................15

*In re Wallace*
14 F.2d 534, 537 (E.D.Okla.1926)......................................................................................15

**Treatises**

2 *Collier on Bankruptcy*
¶ 326.01, at 326-19 (15th ed. 1991)....................................................................................15

3 *Collier on Bankruptcy*
¶330.04[1][b][iii], at 330-31 (rev. 15th ed. 1999)

Silverman Perlstein & Acampora LLP

11-3489052

100 Jericho Quadrangle, Suite 300

Jericho, New York 11753

(516) 479-6300

Edward M. Flint, Esq. (EMF#7001)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:

                                                Case No.:  04CV3196 (ADS)

MICHAEL STEIN,

                                                U.S. Bankruptcy Court

                         Debtor.                    Case No. 8-01-84011


-------------------------------------------------------------------x


## PRELIMINARY STATEMENT

Kenneth P. Silverman, the Chapter 7 Trustee ("Appellant" or the "Trustee") of Michael A. Stein (the "Debtor"), by his attorneys, Silverman Perlstein & Acampora LLP ("SPA") respectfully submits this brief in support of his appeal from the decision of United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), dated April 27, 2004 (the "Decision") and the Order, dated May 10, 2004 (the "Order"), which (a) reduced the compensation awarded to SPA, as counsel to the chapter 7 trustee, based solely upon the application of a "proportionality" test and (b) denied, in part, Appellant's application for statutory commissions as chapter 7 Trustee because "the trustee's commission is calculated based solely upon the proposed distribution to his own firm and to no others."   As demonstrated below, in the Decision and the Order, the Bankruptcy Court misinterpreted Bankruptcy Code sections 326(a) and 330.  Therefore, the Order should be reversed and the Appellant and SPA should be awarded the full amounts requested in the applications submitted to the Bankruptcy Court.

Having found that the Trustee's "conception of his duty is as commendable a sense of duty as it is rare,"[1] and that SPA performed its duties in a "relentless and resourceful manner" (Rec. No. 14 at

---

[1] The Bankruptcy Court also described the Trustee as "very decent, highly competent, and generally respectful …."

1[2]), the Bankruptcy Court proceeded to find that the compensable value of over $74,000 in time spent by SPA is only $26,000 and that the Trustee is entitled only to reduced compensation for the discharge of his duties based on a manufactured distribution to creditors in violation of the absolute priority rule of distribution. (Of course, the Trustee had the option of waiving his commissions and having SPA apply for $40,055 in fees and expenses, but chose not to because of the results obtained in administering this estate and in blocking the Debtor's discharge.)  The Bankruptcy Court gave no weight to the *more than $47,000 voluntary reduction in fees made by SPA*, or the fact that the time expended by SPA in pursuing the denial of the Debtor's discharge was at risk of non-payment from the start.

The Bankruptcy Court impliedly held that a trustee is required to perform an analysis of the probable *direct and material* benefits to creditors *before* he undertakes the task of challenging the discharge of a dishonest debtor.[3]  Taken to its logical conclusion, the Bankruptcy Court's express holding that an award of compensation to a trustee and his counsel must be based on the creditor's receiving "a direct and material benefit from the trustee's administration of the bankruptcy estate" (Rec. No. 14 at 1), requires that every Trustee perform the prospective analysis of probable distributions *to creditors* and refrain from pursuing denial of discharge or recovery actions *unless* there is a demonstrable probability of "material" distributions.

It is clear that affirmation of the Decision and the Order would create disincentives for trustee's and their counsel to further and protect public policy and congressional goals embodied in the Bankruptcy Code.

<div align="center">**ISSUES PRESENTED ON APPEAL**</div>

1.	Whether the Bankruptcy Court erred in the Order by reducing the compensation awarded to SPA?

2.	Whether the Bankruptcy Court erred in the Order by denying Appellant's application for statutory commissions as chapter 7 trustee?

---

[2] All references to "Record" or "Rec." refer to the Trustee's Record on appeal, filed with the Court on June 21, 2004.

[3] Significantly, at the hearing on the Trustee's application, the Bankruptcy Court never asked the Trustee, or his

3.      Whether the Bankruptcy Court, in the Decision and the Order, improperly subordinated SPA's administrative expense claim to the claims of priority and general unsecured creditors, in contravention of the distribution priority established by the Bankruptcy Code?

## RELEVANT FACTS

### The Trustee's and SPA's Efforts and Their Results

On May 16, 2001, Michael A. Stein filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Trustee was thereafter appointed as interim Trustee and qualified as the permanent Trustee. (Rec. No. 1, Docket No. 1)  By Order dated October 31, 2001, the Court authorized the Trustee's retention of SPA as counsel to the Trustee. (Rec. No. 1, Docket No. 5) SPA represented the Trustee in the investigation of the Debtor's finances and alleged fraudulent transfers and in the prosecution of an adversary proceeding to deny the Debtor a discharge, which resulted in the denial of his discharge, and a fraudulent conveyance adversary proceeding against the Debtor's girl friend, which was settled for $40,000.00. (Rec. Nos. 2, 3, 4, 16, 24-26 and 27-38)

Subsequent to the Trustee's appointment and his retention of SPA, a detailed investigation of the Debtor=s financial affairs was prompted by information provided to SPA by the Debtor=s brother and the attorney for the Debtor=s estranged spouse.  In particular, the spouse=s attorney provided SPA with copies of various insurance checks payable to the Debtor that had been endorsed over to the Debtor's girl friend, June Krinsky.  The evidence presented to the Trustee and SPA and the policy embodied in Bankruptcy Code section 727(c)(2) demanded further investigation and SPA conducted both informal interviews and formal Bankruptcy Rule 2004 examinations of the Debtor and June Krinsky.[4]  (Rec. Nos. 2 and 3)

As a result of SPA's examinations of the Debtor and Ms. Krinsky, the Trustee determined that (a) the Debtor had withheld material information and/or made material misstatements on his bankruptcy schedules and statement of financial affairs and should be denied his discharge pursuant to section

---

counsel, to justify his commissions, only to justify not making any distribution to creditors.

[4] Determined to justify its allocation of a distribution to creditors, in violation of the priority of distribution rules in the Bankruptcy Code, the Bankruptcy Court stated that SPA had reported $9,397.00 in fees related to denial of discharge. (Rec. No. 14 at 4)  This reported figure does not include the considerable time expended by SPA reviewing the Debtor's and Ms. Krinsky's records, conducting the informal interviews and Rule 2004 exams or

3

727 of the Bankruptcy Code and (b) Ms. Krinsky had received over $180,000 in potentially fraudulent transfers over a period of six years.  In furtherance of the Trustee's statutory duties and his obligations to creditors, the Trustee commenced separate adversary proceedings to block the Debtor's discharge and to recover avoidable transfers from Ms. Krinsky.  (Rec. Nos. 17, 28 and 29)

At every stage of the litigation, the Trustee and SPA were opposed by the Debtor's and Ms. Krinsky's counsel.  In the case of the adversary proceeding against the Debtor, SPA was required to engage in discovery (Rec. Nos. 20, 25 and 26)  and to conduct a trial (Rec. Nos. 16 and 23), apparently, the first trial of a denial of discharge case that Judge Bernstein had seen in his seven years on the bench.  (Rec. No. 14 at note 2.)  In the case of the adversary proceeding against Ms. Krinsky, SPA was required to defend a motion for summary judgment.  (Rec. Nos. 35 and 36)

After two days of trial testimony (Rec. Nos. 16 and 23), the Trustee and the Debtor entered into a settlement that provided for the Debtor to withdraw his answer and for entry of an Order denying the Debtor's discharge.  (Rec. Nos. 23 and 24)

After submission of summary judgment pleadings to the Bankruptcy Court, Ms. Krinsky and the Trustee engaged in settlement talks, including financial disclosure by Ms. Krinsky concerning her ability to satisfy a judgment.  As a result of the negotiations and Ms. Krinsky's financial disclosure, the Trustee and Ms. Krinsky entered into a settlement agreement pursuant to which Ms. Krinsky paid to the Trustee the sum of $40,000 and waived any claims against the estate in settlement of the Trustee's complaint against her. (Rec. No. 38)  The settlement was approved by the Bankruptcy Court on March 26, 2003. (Rec. No. 27, Docket No. 28)

**The Trustee's and SPA's Applications Below**

On February 26, 2004, the Trustee  filed an application for  the maximum compensation allowable under 11 U.S.C. § 326 (a), which provides for compensation of 25% on the first $5,000.00 disbursed to parties in interest (except the Debtor) and 10% on the next $45,000.00 disbursed.  Based on disbursements in the sum of $40,055, the Trustee sought the sum of $4,755.50. (Rec. No. 8)  By application filed on February 26, 2004, SPA sought compensation for services rendered in the amount

---

prosecuting the adversary actions.  (Rec. No. 9)

of $27,610.67 and reimbursement for expenses in the amount of $7,138.84.   SPA's application

included a reduction in fees of $47,011.63. (Rec. No. 9)

The Office of the United States Trustee filed a Statement, dated February 25, 2004, in which

the United States Trustee stated that she had no objection to the allowance in full of the fees and

commissions sought by SPA and the Trustee.  (Rec. No. 10.)  At the hearing on the applications of the

Trustee and SPA, the Office of the United States Trustee supported the applications.

**The Bankruptcy Court's Decision and Order**

In its Decision (Rec. No. 14), the Bankruptcy Court expressly found that

> "the [T]rustee's counsel … was relentless and resourceful in prosecuting the objection to the debtor's discharge, including taking extensive pretrial discovery, with depositions held for each witness to be called.  [Counsel] made every effort to be accommodating to his opposing counsel. Regrettably, a vigorous prosecution to advance a public goal often results in the necessary incurrence of professional fees that cannot be recovered.
>
> …
>
> The Court does commend the trustee and his firm for its advancing the public interest in blocking a dishonest debtor's discharge, but it cannot accept as a normative standard the trustee's notion that he and his firm are entitled to the … balance of the estate …."

Rec. No. 14, at 3-4.

By the Order, the Bankruptcy Court reduced SPA's award of compensation to $26,000, based

on a "proportionality" and "totality of the facts and circumstances" analysis and denied, in part, the

Trustee's application because it was calculated based solely on distributions to SPA.  (Rec. No. 14) As

demonstrated below, the Bankruptcy Court erred in both holdings.

## STANDARD OF REVIEW

"Compensation orders present matters committed to the bankruptcy court's discretion.

Decisions committed to the discretion of the bankruptcy court are reviewed for an abuse of discretion."

*In re Lan Associates XI. L.P.,* 237 B.R. 49, 54 (D.N.J. 1998).  An abuse of discretion involves a "clearly

erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *In re*

*Integrated Resources, Inc.,* 157 B.R. 66, 72 (S.D.N.Y. 1993).  As demonstrated herein, the Bankruptcy

Court reached an "errant conclusion of law" that requires reversal of the Order.

## STATUTORY BACKGROUND

5

Chapter 7 of the Bankruptcy Code provides for the “liquidation” of a debtor's nonexempt property and the distribution of the proceeds to creditors. A chapter 7 trustee is appointed to administer the bankruptcy estate and to represent the interests unsecured creditors. A trustee is a fiduciary, bound to act to protect the interests of the estate and the integrity of the bankruptcy process, and to assure a debtor’s compliance with its obligations under the Bankruptcy Code. Among the Trustee’s duties is to “collect and reduce to money the property of the estate; … investigate the financial affairs of the debtor … [and] if advisable, oppose the discharge of the debtor ….” 11 U.S.C. §§ 704(1), (4) and (6). To aid in the fulfillment of his duties, the Trustee is empowered to, among other things, commence adversary proceedings to oppose the discharge of the debtor and to avoid and recover fraudulent conveyances. 11 U.S.C. §§ 727(c)(1), 544, 548 and 550. A debtor’s entitlement to a discharge is so central to a chapter 7 and so impacts the rights of creditors that Congress authorized parties-in-interest to move the bankruptcy court to “order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.” 11 U.S.C. § 727(c)(2).

The compensation of a chapter 7 trustee is governed by 11 U.S.C. §§ 326(a) and 330(a). Section 326 provides for the maximum compensation of a chapter 7 trustee based on the monies disbursed or turned over in the case by the trustee. Section 330 governs the compensation of all professionals, including trustees and attorneys, and limits said compensation to “reasonable compensation for actual, necessary services rendered. . . .” 11 U.S.C. § 330(a)(1)(A).

Section 503(b)(1) of the Bankruptcy Code provides the vehicle for the payment of, *inter alia,* legal fees incurred by a chapter 7 trustee's counsel. Specifically, Section 503(b)(2) authorizes the allowance, as an administrative expense, of certain post-petition expenses, including "compensation and reimbursement awarded under section 330(a) of this title ….” 11 U.S.C. § 503(b)(2). Sections 726(a)(1) and 507(a)(1) of the Bankruptcy Code provide a first priority in distribution for administrative expenses allowed under section 503(b). 11 U.S.C. §§726(a)(1) and 507(a)(1).

The United States Trustee is charged with supervising the administration of cases and trustees in cases filed under chapter 7, 11 and 13 of Title 11. See 28 U.S.C. § 586(a)(3). As part of this supervisory role, the United States Trustee is responsible for, among other things, "'reviewing. . .

applications filed for compensation and reimbursement under section 330 of title 11 [and] filing with

the court comments with respect to such applications and, if the United States Trustee considers it to

be appropriate, objections to such application." 28 U.S.C. §§ 586(a)(3)(A)(i) and (A)(ii).

<div align="center">

**ARGUMENT**

**POINT I**

**THE COURT ERRED IN APPLYING A "PROPORTIONALITY"
TEST TO THE TRUSTEE'S AND SPA'S FEE APPLICATIONS**

</div>

Courts in the Second Circuit have applied a prospective analysis to an application under 11

U.S.C. §330, which focuses on "what services a reasonable lawyer or legal firm would have performed

in the same circumstances." *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d. Cir. 1996) (citing *In re*

*Taxmon Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995)). Generally, the courts do not examine a fee

application from the perspective of hindsight. 3 *Collier on Bankruptcy*, ¶330.04[1][b][iii], at 330-31 (rev.

15th ed. 1999).

In contrast, the Bankruptcy Court applied a standard grounded in pure hindsight in examining

the applications of both the Trustee and SPA: "The Court has previously addressed the issue of

necessary due proportionality between reasonable compensation for the trustee and the trustee's own

counsel and the amount recovered in an avoidance action." (Rec. No. 14, p. 3).[5] The Bankruptcy

Court's "due proportionality" standard, unsupported by the Bankruptcy Code or by the case law, may

be appropriate in the context of professionals who seek compensation for incompetently performed

services or in the face of breach of fiduciary duties. In the case of requests for compensation for

services competently performed and fiduciary duties faithfully discharged, the Bankruptcy Code, as

applied by the courts, provides for a very different standard.

---

[5] Appellant and SPA are puzzled by the Bankruptcy Court's citation to its own decision *In re E. Keffas & Son Florist, Inc.*, 240 B.R. 466 (Bankr. E.D.N.Y. 1999), which involved a trustee's "breach" of his duties, lost opportunity costs suffered by creditors and the trustee's liability therefore. Here, both the Trustee and SPA were expressly commended for exemplary performance of their duties.

<div align="center">

7

</div>

Courts, when reviewing fee applications, generally use the "lodestar" approach pursuant to which the court first establishes a reasonable hourly rate of compensation based on the value of the services provided and the cost of comparable services, and then multiplies such rate by the reasonable number of compensable hours. *In re Busy Beaver Bldg. Center, Inc.,* 19 F. 3d 833, 849 (3d Cir. 1994).

As recognized by the United States Supreme Court, it has been made clear that the lodestar approach subsumes each of the factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). See *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 563 (1986); see also *In re Cena=s Fine Furniture, Inc.*, 109 B.R. 575, 581 (E.D.N.Y. 1990).[6]

The philosophy underlying the adoption of sections 330 and 331 of the Bankruptcy Code, to wit, that notions of economy are outdated and have no place in a bankruptcy case, see 124 Cong. Rec. H11, 089 (daily ed. Sept. 8, 1978) is applicable here. In awarding compensation pursuant to sections 330 and 331 of the Bankruptcy Code to retained professionals, the Court must take into account the cost of comparable non-bankruptcy services, among other factors. *Busy Beaver*, 19 F.3d at 848 ("the principal purpose of the 1978 amendments to '330 was to compensate bankruptcy attorneys at the same level as non-bankruptcy attorneys"). See also H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 329 (1977) ("Bankruptcy specialists, however, if required to accept fees in all cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field"); 124 Cong. Rec. H11, 091-92 (daily ed. Sept. 28, 1978).

When the Trustee's and SPA's applications and performance are examined in the proper perspective, it is clear that both the Trustee's and SPA's applications should be granted. Once the Debtor's brother and, in particular, the former spouse's counsel had brought to the Trustee's attention

---

[6]   Factors that courts have considered when reviewing fee applications include: (a) the amounts resulting from time and labor devoted and the results achieved to date; (b) the novelty and difficulty of the questions presented; (c) the skill requisite to performing properly the legal services; (d) the preclusion of other employment; (e) the customary fee to private clients for the services rendered; (f) awards in similar cases; (g) time constraints required by the exigencies of the case, including the frequency and amount of time required to be devoted other than in regular business hours; (h) the experience, reputation and ability of the attorney rendering services; and (i) the nature and length of the professional relationship with the client. See *Johnson v. Georgia Highway Express*, 488 F.2d at 717-19; *In re First Colonial Corp. of America*, 544 F. 2d 1291, 1294 (5th Cir.), *cert denied*, 431 U.S. 904

evidence of the Debtor's fraudulent transfers, which were not reported on his statement of financial affairs, the Trustee, through SPA, was obligated to investigate and prosecute a proceeding to block the Debtor's discharge.  See 11 U.S.C. §§ 704(4) and (6), 727(c)(1).  Upon discovery of $180,000 in fraudulent transfers to Ms. Krinsky, it was a prudent decision to bring suit to recover those transfers for the estate.  Similarly, upon investigation of Ms. Krinsky's financial condition, it was prudent of the Trustee to settle with Ms. Krinsky for $40,000, and not prolong the litigation.  It is significant that the Bankruptcy Court commends the efforts of the Trustee and SPA and never criticizes the work performed as excessive, unnecessary or ineffectual.  The results obtained by the Trustee and SPA speak for themselves.  SPA incurred over $74,000 in time charges in connection with its investigations of the Debtor and Ms. Krinsky and the prosecution of two adversary proceedings.  Neither the Bankruptcy Court nor the Office of the United States Trustee found any grounds to criticize the services performed by SPA or its time charges.  Rather, the Bankruptcy Court improperly employed an analysis based entirely on hindsight and "proportionality."

The Bankruptcy Appellate Panel for the Eighth Circuit faced similar circumstances in *In re DLC, Ltd.*, 295 B.R. 593 (8th Cir. B.A.P. 2003).  In *DLC*, a non-debtor trust, a defendant in an adversary proceeding, objected to the reasonableness of fees awarded under section 330, in part, because no benefit accrued to the estate.  The BAP affirmed the Bankruptcy Court finding that "the estate was benefited even if in the end it appears the only persons who will receive compensation is the trustee and counsel."  *Id.* at 609.  The Court's conclusion was based on the observation that the litigation was justified because the debtor had little incentive to settle with the defendant.

In the present case, the Bankruptcy Court's failure to take into account the Trustee's performance of his statutory duties and the role played by SPA in fulfilling those duties and furthering public policy is reversible error, as is the Bankruptcy Court's total reliance on an analysis of the applications of the Trustee and SPA based on a standard grounded in pure hindsight.

## POINT II

### THE BANKRUPTCY COURT IMPROPERLY
### SUBORDINATED THE ADMINISTRATIVE EXPENSE

---

(1977).

**CLAIMS OF THE TRUSTEE AND SPA TO THE**
**CLAIMS OF PRIORITY AND UNSECURED CREDITORS**

The Bankruptcy Court, on the one hand, "commend[ed] the trustee and his firm for its advancing the public interest in blocking a dishonest debtor's discharge" while, in the same sentence, rejected "as a normative standard the trustee's notion that he and his firm are entitled to the [full balance] of the estate." (Rec. No. 14, p. 4)  In essence, the Bankruptcy Court subordinated the administrative expense claims of the Trustee and SPA to the claims of pre-petition priority and unsecured creditors in disregard of the absolute distribution priorities established by Congress in sections 726 and 507 of the Bankruptcy Code.  This is especially surprising in a case where no creditors objected to the fees being sought, the United States Trustee filed a statement of "no objection" to the full amounts sought (Rec. No. 10) and virtually all of the fees incurred were the result of investigation and successful litigation urged on the Trustee and SPA by creditors.

Section 726(a) of the Bankruptcy Code provides, in relevant part, as follows:

> (a)      Except as provided in section 510 of this title, property of the estate <u>shall</u> be distributed --
>
> (i)      First, in payment of claims of the kind specified in, <u>and in the order</u> specified in, section 507 of this title . . . .

11 U.S.C. §726(a)(i).  (Emphasis added.)  Section 507(a) provides, in relevant part, that "The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title . . . ."  11 U.S.C. §507(a)(1).  Pursuant to section 503(b), administrative expenses given first priority in distribution includes "compensation and reimbursement awarded under section 330(a) of the title."  11 U.S.C. §503(b)(2).  Fees of the Trustee and SPA, properly awardable under section 330, therefore, are entitled to be paid prior to the claims of priority and unsecured creditors "even if it appears the only persons who will receive compensation is the trustee and his counsel."  295 B.R. at 609.

The Bankruptcy Court's failure to employ the lodestar approach discussed above and its substitution of its own "proportionality" standard amounts to improper judicial re-engineering of the absolute distribution priorities so carefully crafted by Congress.

The foregoing policies and philosophy, and those reflected in the legislative history of section 330 cited above, are especially relevant where it is necessary to encourage skilled professionals to investigate and prosecute actions against dishonest debtors, even if there is a risk of no or dramatically reduced compensation.  The Bankruptcy Court's approach, effectively subordinating the expense claims of a trustee and his professionals, creates a disincentive for professionals to pursue dishonest debtors, which is diametrically opposed to congressional policy as interpreted and elaborated on by the Courts.

Accordingly, the Decision and the Order should be reversed and the Trustee and SPA should be awarded the full compensation sought in their applications.

11

<div align="center">

**POINT III**

**DISBURSEMENTS MADE BY A TRUSTEE
TO COUNSEL ARE PROPERLY
INCLUDED WITHIN THE BASE FOR
COMPUTING A TRUSTEE'S COMMISSION**

</div>

As noted above, 11 U.S.C. § 326 governs the "reasonable compensation" allowed to bankruptcy trustees.  The section states, in pertinent part, that:

> "[i]n a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000 . . . upon <u>all moneys disbursed</u> or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

(Emphasis added)

The "plain meaning" of the statutory language provides for the inclusion of a trustee's distribution to his counsel, or to any other administrative claimant, in the base for calculating the trustee's commissions.  <u>See</u> *United States* v. *Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S. Ct. 1026, 1031 (1989) ("The plain meaning of legislation should be conclusive . . .")  Additional analysis leads to the same result.  <u>See</u> <u>also</u> 295 B.R. at 609.

In support of its conclusion that distributions by a trustee to his counsel should be excluded from the base for computing a trustee's commission, the Bankruptcy Court cites to its prior decision in *In re Guido,* 237 B.R. 562 (Bankr. E.D.N.Y. 1999), which, in turn, cites to paragraph 6.02 of Judge Bernstein's treatise, entitled "Compensation, Employment and Appointment of Trustees and Professional Persons in Bankruptcy Cases."  <u>See</u> *Guido,* 237 B.R. at 564.  The Bankruptcy Court's reliance upon *In re Guido* and its treatise are misplaced.

In *Guido,* the trustee sought to have included in the base upon which his commission was to be calculated the amount disbursed *directly* to the debtor's personal injury counsel from a personal injury settlement.  The gross settlement proceeds were in the sum of $520,000.00.  From that sum, the personal injury attorney was paid directly a one-third contingency fee of $171,013.56, plus reimbursable costs of $9,959.31, and $40,000.00 was paid directly to the worker's compensation

<div align="center">12</div>

carrier to satisfy its lien.  *Guido,* 237 B.R. at 563.

The trustee sought a commission of $16,705.95, which was the maximum allowable under section 326(a) based on $269,118.91 in disbursements.[7]  *Guido,* 237 B.R. at 563-564.  The debtor objected that "the commission, in effect, represents a double-charge on the very substantial dollars collected by his personal injury lawyer and the workmen's compensation carrier."  Id. at 564.  Based on the debtor's objection, the Bankruptcy Court reduced the trustee's commission by excluding the sums paid directly to the personal injury counsel and workmen's compensation carrier, and not to the trustee, from the calculation base.  In *Guido*, the trustee's commission request was based, in part, on funds paid directly to his counsel and to Workers' Compensation.  In contrast, the Trustee's request for a commission here is calculated based upon amounts actually received by the Trustee as a result of his and his counsel's efforts.

The Bankruptcy Court began its analysis by noting that Section 326(a) "incorporates a discretionary standard for allowing the trustee's commission.  *Guido,* 237 B.R. at 564.  However, to the extent that the Bankruptcy Court relied upon his discretionary authority to reduce the trustee's commission in *Guido,* the decision is inapposite because here, the Bankruptcy Court expressly found that the Trustee had performed his duties and advanced the public interest.  (Rec. No. 14)  Unlike *Guido*, all funds generated in this case were received as a direct result of the Trustee's and SPA's efforts.

The Bankruptcy Court next analyzed "[w]hat, as a matter of law, is includable within the base for computing the trustee's commission?"  The Bankruptcy Court reviewed the distinction between funds that are "constructively" received versus "actually" received.  *Guido,* 237 B.R. at 565.  Without deciding that particular issue, the Bankruptcy Court, analogizing funds that are subject to a charging lien with Article 3A Lien Law funds that do not become property of the estate even if marshaled by the trustee, reasoned that the trustee "is not entitled to be paid a commission on settlement proceeds that are subject to a constructive, charging, or equitable lien on the settlement proceeds as a matter of state law in favor of the plaintiff's counsel and the insurance carrier."  Id. at 565.  The settlement proceeds at

---

[7]  The $251,777.01 in settlement proceeds paid or to be paid to the debtor was excluded from this figure.

issue here were not subject to a charging lien in favor of SPA.  The attorney lien provisions of New York Judiciary Law Section 475 simply do not apply to the trustee-attorney relationship created under and governed by the Bankruptcy Code.

The only other issue raised by *Guido* involved the Bankruptcy Court's determination that for purposes of calculating a trustee's commission under 11 U.S.C. § 326, there is a distinction "between payment of secured claims when (i) the trustee has expended a significant amount of case administrative time in liquidating property of the estate which is partially encumbered; and (ii) when the trustee merely monitors the  debtor's pre-petition claim for personal injury ... in the hope that the settlement or judgment will net some funds for distribution to the estate, especially administrative expenses and priority claims." Id. at 566.  This issue has no application to the facts here, where the Trustee retained counsel to pursue an action to block a "dishonest debtor's" discharge and a fraudulent conveyance action against the Debtor's girlfriend that was settled for $40,000.00.  As the Bankruptcy Court itself found, the Trustee's and SPA's actions constituted far more than the mere monitoring of litigation.

Thus, *Guido* is easily distinguished from this case and does not support the Bankruptcy Court's decision to exclude the attorneys' fees paid to SPA from the Trustee's commission base.

Overlooked by the Bankruptcy Court are the numerous courts and commentators that have concluded that disbursements to litigation counsel are properly included in a trustee's commission base.  For example, in *In re North American Oil* & *Gas, Inc.,* 130 B.R. 473, 478 (Bankr. W.D. Tex. 1990), the chapter 11 trustee included in his base for purposes of calculating his commissions the sum of $621,550.00 distributed to professionals, including the trustee's litigation counsel and his accountant.  After reviewing the relevant statutory provisions, including 11 U.S.C. §§ 326, 330 and 503, the Court conclude that "disbursements to professionals and disbursement in payment of administrative expenses under Section 503(b)(1)(A) are includable in the base. . . for purposes of calculating the maximum trustee's compensation allowed under Section 326(a)." *In re North American Oil* & *Gas, Inc.,* 130 B.R. at 478, citing to *In re Wallace,* 14 F.2d 534, 537 (E.D.Okla.1926), aff'd sub nom., *McMillan v. United States Fidelity* & *Guar. Co.,* 22 F.2d 155 (8th Cir. 1927).  See also 295 B.R. at 609.

The conclusion in *In re North American Oil & Gas, Inc.* was cited with approval by the Court in *In re Orient River Investments, Ltd.,* 133 B.R. 729, 732 (Bankr. B.D. Pa. 1991).  A leading bankruptcy treatise states that under 11 U.S.C. § 326(a), "the trustee is entitled to compensation based on total moneys disbursed, including administrative expenses, such as compensation to professional persons or expenses necessarily incurred in administering the estate."  2 *Collier on Bankruptcy*, ¶ 326.01*,* at 326-19 (15th ed. 1991).

It is black letter law that the fees paid by the Trustee to SPA in this case were properly included in the base for computing the Trustee's commissions.  It is for this reason, Appellant believes, that the United States Trustee supported the fee application of the Trustee.  The Bankruptcy Court had no legal or factual basis to reduce the Trustee's commissions, and the Order should be reversed.

<u>CONCLUSION</u>

For all of the foregoing reasons, this Honorable Court should reverse the Order, award the Trustee and SPA the full fees sought in their applications and grant such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
      August 13, 2004

                             **Silverman, Perlstein & Acampora LLP**
                             Attorneys for Chapter 7 Trustee

                  By:    s/Edward M. Flint
                             Edward M. Flint (EMF#7001)
                             A Member of the Firm
                             100 Jericho Quadrangle, Suite 300
                             Jericho, New York 11753
                             (516) 479-6300

#165343